(No. 48153.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. LARRY LEEMON, Appellee.

*Opinion filed March 23, 1977.*

William J. Scott, Attorney General, of Springfield, and Michael M. Mihm, State's Attorney, of Peoria (James B. Zagel, Jayne A. Carr, and Anne Taylor, Assistant Attorneys General, of Chicago, and James E. Hinterlong and Russell H. Boothe, of Illinois State's Attorneys Association Appellate Assistance Service, of Ottawa, of counsel), for the People.

James Geis, Deputy Defender, Office of State Appellate Defender, of Chicago (Ruth Stern Geis, of counsel), for appellee.

MR. JUSTICE DOOLEY delivered the opinion of the court:

Defendant, Larry Leemon, was found guilty by a jury on a charge of making an unlawful delivery of a controlled substance (LSD). He was sentenced to serve a term of from 3 1/3 to 10 years in the penitentiary. The appellate court reversed, with one judge dissenting. (33 Ill. App. 3d 461.) We granted the State's petition for leave to appeal.

The only question on appeal is the sufficiency of evidence to prove a plastic bag containing LSD received in evidence was the one allegedly sold by defendant to a police officer.

Officer Robert Edwards testified that on May 2, 1972, he had been contacted in his apartment by the defendant's brother, Darrell Leemon. Darrell, out of the presence of the defendant, had asked Edwards if he was interested in purchasing from the defendant a quantity of LSD referred to as "strawberry mescaline." He advised Edwards that the defendant, who lived in another apartment in the same building, had some available for sale. A transaction took place between the defendant and Edwards in defendant's apartment in which Edwards paid defendant $75 and received in return a plastic bag containing an orange-colored substance which was purportedly four-fifths of an ounce of mescaline. Edwards subsequently marked this bag with his initials and the date.

Later that same evening Edwards made a purchase from a person, not connected with defendant, of a one-ounce quantity of the same drug. This was also in a plastic bag. As he had with the bag bought from the defendant, Edwards also marked this second bag with the date and his initials. Edwards stated that despite the identical markings on the two bags, he had been able to distinguish between them by a perceptible difference in

their size because of the differing weight of the contents.

On the next day Edwards delivered both bags to another police officer, George Tegard. Tegard stated he marked each bag with his initials and the date. Tegard also testified that there was an observable difference in the size of the two bags. Tegard field tested the contents of each bag, and ascertained that each bag contained LSD. He then sent the items by registered mail to the Federal Bureau of Narcotics.

James Done, a chemist for the Bureau, testified that he could recognize the bag in question as one of the two which he had previously received from Tegard, by virtue of his initials and a laboratory number which appeared on it. He stated further that the bag weighed .79 ounces, and that the laboratory tests showed the substance in the bag was LSD. After the tests were made, Done returned the bag to Tegard in a box. Tegard, without opening it, placed it in a locker, where it remained until the trial.

Despite this uncontroverted identification evidence, the appellate court found the proof deficient in that the bag offered in evidence might have been the second bag which Officer Edwards had obtained from a person other than defendant. From this it concluded that there had been a failure of proof that what the defendant sold Officer Edwards was indeed a controlled substance.

The conclusion reached by the appellate court is inconsistent with *People v. Polk* (1960), 19 Ill. 2d 310, and with other decisions of this court dealing with the identification of narcotics obtained by police from a defendant. See *People v. Judkins* (1957), 10 Ill. 2d 445; *People v. Anthony* (1963), 28 Ill. 2d 65; *People v. Greer* (1963), 28 Ill. 2d 107; *People v. Cain* (1966), 35 Ill. 2d 184; *People v. Washington* (1968), 41 Ill. 2d 16.

In *Polk*, defendant urged insufficiency of proof that an envelope whose contents had been ascertained by a police department chemist to contain the narcotic in question was the same envelope which a police officer had

testified to having obtained from defendant. He claimed a want of proof of the identity of the chemist to whom the envelope was delivered or evidence as to the handling of and keeping of the envelope between the time it was obtained from defendant and its production in court. We rejected that contention since the testimony of the purchasing police officer, together with a stipulation between the parties as to the contents of the envelope, showed a sufficient continuity of possession and eliminated further proof of the handling and keeping of the envelope between the time it came into the possession of the police and its production in court.

This is simply a question of the credibility of the witnesses—a matter preeminently for the fact triers. Here each police officer testified that the bag purchased from defendant was different in appearance from the other bag, and that he was thus able to distinguish the one from the other. The fact that the second bag was not introduced in evidence for purposes of comparison does not mean that the uncontested testimony by the officers was to be disregarded. In addition to this identification testimony, there was established a continuous chain of possession by all those in whose custody the drug had been.

*People v. Maurice* (1964), 31 Ill. 2d 456, relied on by the defendant, is inapposite. In that case, decided upon a stipulation between the parties, it appeared that eight different packets containing heroin had been obtained from the defendant at the time when he was apprehended by two police officers. It was stipulated that the officer who received all eight packets had delivered one to the crime laboratory, but it was also stipulated that the examining chemist would testify he had received eight packets from the other officer. Obviously, there was nothing to link the material examined by the chemist with the packets connected with the defendant.

Defendant makes two additional arguments for reversing his conviction. The first is that it was prejudicial for

the trial court to permit Officer Edwards to sit at the counsel's table, after ordering all other witnesses excluded. It is within the trial court's discretion to permit a material witness to remain in the courtroom to assist the State's Attorney. *People v. Miller* (1962), 26 Ill. 2d 305.

Defendant's final claim is that evidence by Edwards of a conversation with the defendant's brother outside the presence of the defendant should have been excluded as hearsay. It concerned a statement by defendant's brother in response to a query of Edwards that defendant had some strawberry mescaline for sale. The State contends that the defendant's brother was a co-conspirator in procuring or facilitating the illegal sale, and that the conversation was therefore admissible as an exception to the hearsay rule. We need not reach that question since this testimony could not be prejudicial error in view of the evidence of Edwards' purchase of the mescaline from the defendant.

The judgment of the appellate court is reversed and that of the circuit court affirmed.

*Appellate court reversed;*
*circuit court affirmed.*