THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TRAVIS D. STANLEY, Defendant-Appellant.

Third District    No. 3—93—0816

Opinion filed June 24, 1994.—Rehearing denied August 8, 1994.

Mark Jackson, of Jackson & Jackson, of East Moline, for appellant.

Larry VanDerSnick, State's Attorney, of Cambridge (John X. Breslin and Nancy Rink Carter, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:
Defendant, Travis D. Stanley, was stopped and issued a traffic citation for speeding on October 11, 1992. He then brought a motion to dismiss the charges, which was denied. A jury found him guilty of

speeding on March 22, 1993. Defendant appeals the denial of his motion to dismiss.

The record shows that Route 84 separates the towns of Green Rock and Colona. Northbound Route 84 is within the city limits of Colona while southbound Route 84 is within Green Rock. Defendant was driving northbound on Route 84. Thus, he was never within the city limits of Green Rock. A Green Rock policeman, Officer C. Oliva, was conducting stationary radar surveillance at the intersection of Route 84 and Sixth Avenue on the Green Rock side. He clocked defendant at 44 miles per hour in a 30-mile-per-hour speed zone. Officer Oliva then pulled defendant over and charged him with speeding.

In the motion at issue, defendant contended that his arrest was outside the scope of Officer Oliva's jurisdictional authority. Thus, it was void pursuant to *People v. Lahr* (1992), 147 Ill. 2d 379, 589 N.E.2d 539. The traffic court denied the motion, finding *Lahr* distinguishable.

The parties raise three issues on appeal: (1) whether Officer Oliva had the authority to arrest under section 7—4—8 of the Illinois Municipal Code (65 ILCS 5/1—1—1 *et seq.* (West 1992)); (2) whether Officer Oliva had the authority to arrest as a private citizen under section 107—3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/101 *et seq.* (West 1992)); and (3) whether the arrest was invalid according to the Illinois Supreme Court's holding in *Lahr*.

Where the facts of a case are uncontested and the issue on appeal is the trial court's application of law to facts, the appellate court may determine the law independently of the trial court's judgment. (*People ex rel. Edgar v. Curley* (1989), 188 Ill. App. 3d 37, 543 N.E.2d 1088.) Thus, the appellate court may consider the section 7—4—8 argument, which was not raised before the trial court. However, we believe section 7—4—8 gave Officer Oliva no authority to arrest in this case.

■ At common law, a police officer had no authority to make an arrest outside his jurisdiction, except when in fresh pursuit of a felon fleeing the officer's jurisdiction. (*Lahr*, 147 Ill. 2d at 382, 589 N.E.2d at 540.) However, section 7—4—8 of the Municipal Code gives police officers the right to exercise their police powers "to suppress a riot, to preserve the peace, and to protect the lives, rights, and property" of citizens in an adjoining municipality within the same county. (See 65 ILCS 5/7—4—7, 7—4—8) (West 1992).) Green Rock and Colona are adjoining municipalities within the same county.

The State contends Officer Oliva, by arresting defendant, was protecting life as specified in section 7—4—8. It is true that speeders pose a safety threat. However, Illinois case law confines the scope of section 7—4—8 to the arrest of persons who are dangerous enough to

the public to require emergency action. (*People v. Bains* (1987), 152 Ill. App. 3d 951, 505 N.E.2d 13.) Valid arrests under section 7—4—8 include that of an intoxicated driver, as in *Bains*, and an intoxicated man with a gun (*People v. Lawson* (1976), 36 Ill. App. 3d 767, 345 N.E.2d 41). We believe an extension of section 7—4—8 to include speeders is not warranted. Therefore, we hold that the present offense does not fall within the scope of section 7—4—8.

The second issue on appeal, the application of section 107—3 of the Code of Criminal Procedure, is thoroughly addressed by the holding in *Lahr* and does not need to be analyzed separately.

In *Lahr*, a Sleepy Hollow police officer, positioned seven-tenths of a mile outside the Sleepy Hollow city limits, clocked and arrested Lahr outside city limits. Lahr brought a motion to dismiss which the trial court granted. The Second District Appellate Court affirmed, as did the Illinois Supreme Court. *Lahr*, 147 Ill. 2d at 387, 589 N.E.2d at 542.

In *Lahr*, the question was whether section 107—3 of the Code of Criminal Procedure authorized the stop. That section states as follows: "[a]ny person may arrest another when he has reasonable grounds to believe that an offense other than an ordinance violation is being committed." 725 ILCS 5/107—3 (West 1992).

■ Section 107—3 has been interpreted by Illinois courts to permit a police officer to make an extraterritorial warrantless arrest in the same situations that an ordinary citizen can. Thus, such an arrest will not be upheld where the policeman uses his official powers to gather evidence not available to the ordinary citizen. *Lahr*, 147 Ill. 2d at 382-83, 589 N.E.2d at 540.

The Illinois Supreme Court held that Lahr's arrest was void under section 107—3, because: (1) the use of a radar gun to determine a driver's speed is an assertion of police authority not available to an ordinary citizen; and (2) there was no evidence other than the radar that a crime had been committed.

We assume the trial court distinguished *Lahr* because here the radar gun was physically located inside the police officer's jurisdictional limits. In our opinion, this is not a legally significant difference. Therefore, we reverse.

■ The *Lahr* opinion is aimed at preventing police officers from laying speed traps for drivers outside their jurisdiction. This is exactly what Officer Oliva did. Although he may have been physically within his own jurisdiction, he aimed his radar gun outside his jurisdiction to gather evidence of speeding offenses performed outside his jurisdiction. To allow a police officer to sit within his jurisdiction and patrol outside it by the use of technology has the practical effect of

extending his jurisdiction to coincide with the limits of his technology. This result is clearly not within the intent of the Illinois Supreme Court in *Lahr*.

The *Lahr* court's reading of *People v. O'Connor* (1988), 167 Ill. App. 3d 42, 520 N.E.2d 1081, lends support to this interpretation of its holding. In *O'Connor*, radar surveillance originating outside the officer's jurisdiction was used on a road within the jurisdiction. The *Lahr* court stated that it considered this radar surveillance to have occurred within the jurisdiction. Thus, where the radar was used was determinative rather than where it originated. Extending that logic to the instant case makes it legally indistinguishable from *Lahr*.

Based on the foregoing, we find that the trial court erred in denying defendant's motion to dismiss. We therefore reverse the judgment of the circuit court of Henry County.

Reversed.

BARRY and McCUSKEY, JJ., concur.